William and Catherine Fox v. Commissioner.
Fox v. Commissioner
Docket No. 4968-65.
United States Tax Court
T.C. Memo 1968-154; 1968 Tax Ct. Memo LEXIS 147; 27 T.C.M. (CCH) 757; T.C.M. (RIA) 68154; July 18, 1968. Filed *147 Held, petitioners are not entitled to any deduction for the taxable year 1963 under the provisions of sec. 170 of I.R.C. 1954 as the result of the publication on June 1, 1963, in The Journal of Chemical Physics of a paper entitled "Comments on 'Hydrostatics in Various Gravitational Fields.'" Arthur B. Hanson and R.K. Kennon Jones, for the petitioners. George H. Jelly and Dorrance R. Belin, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge. [1] Respondent determined a deficiency in income tax for the calendar year 1963 in the amount of $3,826.04. The sole remaining issue is whether petitioners are entitled to a deduction in the amount of $13,500 for the year 1963 under the provisions of section 170 of the Internal Revenue Code of 1954 *148 as the result of the submission of a scientific paper by petitioner William Fox to The Journal of Chemical Physics where such paper was received by the Journal on December 17, 1962, and published on June 1, 1963. All other issues were agreed upon. Findings of Fact Some of the facts were stipulated. The stipulation, together with all of the exhibits attached thereto, is incorporated herein by reference. Petitioners are individuals, husband and wife. At the time of the filing of the petition herein they resided at Staten Island, N. Y. They timely filed a joint income tax return for the calendar year 1963 with the district director of internal revenue, Manhatten district New York, N. Y. (Note: Whenever the term petitioner is used it will refer to the husband.) Petitioner is a Captain in the New York City Police Department and has been a member of such police department since 1940. During 1963 his wife was employed by the New York City Board of Education. The total Federal income tax withheld from petitioner's salary and his wife's salary for 1963 was $2,925.36, which total amount was refunded to petitioners on May 20, 1964, as a result of the claimed deductions and exemptions exceeding *149 petitioners' combined income. 758 Petitioner received a Ph. D. degree in chemistry from Columbia University in June 1944. Independent of his work in the New York City Police Department, and on his off-duty time, petitioner has been engaged in fundamental research in the physical science for over 24 years. He is the author of the following papers: (a) Contact Angles at Liquid-Liquid-Air Interfaces, published in the Journal of Chemical Physics, 10,623 (1942). (b) A Semimicro Method for the Study of the Action of Fluid Interfaces, presented at a Symposium on the Research Tools of the Colloid Chemist at the 108th meeting of the American Chemical Society, September 10, 1942. (c) On Harkins' "Final Spreading Coefficient" and Antonoff's "Rule," published in the Journal of Physical Chemistry, 48, 158 (1944). (d) A Photographic Method for the Determination of Relative Interfacial Tensions, presented before the Division of Physical Chemistry at the 108th national meeting of the American Chemical Society held during the year 1943. (e) Equilibrium Relationships between Fluid Interfaces, the System Methylene Iodide-Water-Air, published in the American Chemical Society Journal, 67, 700 (1945). (f) *150 Contact Angles and Their Relationship to the Wetting and Spreading of Liquid-Liquid Gas Systems, presented before the Division of Colloid Chemistry at the 116th national meeting of the American Chemical Society, Atlantic City, New Jersey, September 20, 1949. (g) A Convenient Cell-Stage for Fluid Profile Measurements, published in the Review of Scientific Instruments, 21, 499 (1950). (h) Fluid Phases in Mutual Contact: Further Experimental Considerations, published in the Journal of Chemical Physics, 63, 1977 (1959). (i) Comments on "Hydrostatics in Various Gravitational Fields," published in the Journal of Chemical Physics, 38, 2776 (1963). (j) The Conservation of Forces at the Line of Contact of Three Phases, presented at the IVth International Congress on Surface Active Substances, September 8, 1964, in Brussels, Belgium. As a result of Publication (i) above, petitioners claimed a deduction of $13,500 under the category of "Other deductions" on their 1963 income tax return. This claimed deduction was described in the return as "Value to U.S. Government of scientific 'contributions' (see enclosures) in excess of $60,000." Publication (i) represented the comments by petitioner on *151 a paper prepared by a scientist, Ta Li, entitled "Hydrostatics in Various Gravitational Fields," which paper was published by The Journal of Chemical Physics, pages 2369-2375, Vol. 36, No. 9, May 1, 1962. The paper was received by the Journal on September 11, 1961. Ta Li was a scientist with General Dynamics/Astronautics, a division of General Dynamics Corporation, of San Diego, Calif.
In his Publication (i) petitioner took the position that Ta Li, in his said publication, "overlooked" petitioner's prior Publications (a), (e), and (h), above. Ta Li published a reply to petitioner's Publication (i) immediately following petitioner's publication, in which Ta Li, among other things, said: Since my paper is theoretical in nature and is restricted to solid-liquid-vapor systems, references were limited to theoretical papers on these systems only. This is the reason for not mentioning Fox's work on the liquid-liquid-vapor system which gave excellent experimental support to the Dupre-Young equation. Petitioner's Publication (i) was received by The Journal of Chemical Physics on December 17, 1962, and was published by the Journal on June 1, 1963, at page 2776, Vol. 38, No. 11. Petitioner did *152 not have a copyright on the comments that were published as Publication (i). Petitioner spent approximately 2 hours daily in research in preparation of Publication (i) between the time he read the related article by Ta Li and the time he submitted Publication (i) for publication. In reaching a valuation of his article published as Publication (i) petitioner endeavored to approximate applicable salary, chemical equipment, and other costs saved the United States by his effort at writing and publishing such article, including the saving to the United States of time, money, unnecessary expense and effort, and permitting scientists in Government research activity to direct their efforts to possibly more fruitful and useful enterprises. Petitioner's valuation at $60,000 of his article published as Publication (i) was based on his knowledge of relative salaries of fellow scientists through communication 759 with them; his reading of "Chemical and Engineering News," published by the American Chemical Society, which annually publishes an analysis of salaries given to scientists at various levels of education and experience; and his reference to chemical equipment catalogs and his own experience *153 as to the cost of equipment which was referred to in the literature as being used by others such as Ta Li in their research. During petitioner's preparation and study for the Ph. D. degree in chemistry, he studied directly under and was sponsored for research by Arthur W. Thomas, a professor of chemistry, department of chemistry under the graduate faculty of pure science, Columbia University, New York, N. Y.
Thomas had been personally acquainted with and served as personal and academic adviser to petitioner beginning with the latter part of his secondary schooling in the New York high school system. Thomas is a past chairman of the New York section of the American Chemical Society, was chairman of the Committee on Instruction in the graduate faculties of Columbia University and in the period 1944-1953 was chairman of the department of chemistry of that university, and has published over 120 articles in the field of chemistry. Thomas agreed with petitioner's comments in his article published as Publication (i). Thomas has read all of petitioner's scientific publications and believes them to be of great value. The offcial police regulations applicable to petitioner during this entire *154 period proscribed him from engaging for compensation in any activity other than that of a police officer, whether during duty hours or off-duty time. Accordingly, petitioner was not paid anything for the research and work he did in connection with his article published as Publication (i) or any of the other articles. Although petitioner believed his article published as Publication (i) was worth $60,000, he claimed only $13,500 as a deduction for the reason that such an amount, plus the other claimed itemized deductions and exemptions, was all that was needed to exceed petitioners' combined income. In the determination of the deficiency, respondent disallowed the claimed deduction of $13,500 on the ground that petitioners had not established their allowance under any of the sections of the Internal Revenue Code of 1954. Ultimate Findings of Fact Petitioners did not make a charitable contribution or gift in 1963 of property to or for the use of the United States. Petitioners did not make a charitable contribution or gift in 1963 of property which had any measurable value. Opinion Although petitioners claimed the amount of $13,500 as "Other deductions" in their 1963 return, they now *155 claim the amount as a charitable contribution under section 170(a) and (c) of the Internal Revenue Code of 1954, the pertinent provisions of which are in the margin. [2] *156 The pertinent provisions of section 1.170-1, Income Tax Regs., are also in the margin. [3] *157 760 At the outset, it may be noted that petitioners in this case have been before us on two prior occasions involving the same kind of issue in earlier years. [4] *158 On these occasions petitioner William Fox appeared pro se. In the instant case petitioners are represented by counsel. In our first Memorandum Opinion involving the year 1959, we said, in part: Although it may well be true, as petitioners argue, that petitioner's published article represented a valuable contribution to scientific knowledge, the record contains no evidence indicating that he contributed any money or property to any of the types of recipients described in section 170 of the Code. Further, the record does not suggest the fair market value, if any, of the claimed contribution, nor does it disclose any evidence indicating the recipient, if any, to which such purported contribution was made. In our second Memorandum Opinion involving the years 1960, 1961, and 1962 we further stated thus: Indeed, petitioners did not even plead *159 or introduce any evidence showing William wrote or contributed any articles to any scientific or educational organization during any of the years in question with the exception of one 30-line article entitled: "Comments on 'Hydrostatics in Various Gravitational Fields'." This article was published in "The Journal of Chemical Physics" June 1, 1963 but the article indicates it was received for publication December 17, 1962. * * * It is perfectly obvious William made no contribution within the meaning of the statute or regulations when he gave an article to a scientific organization to be published. Even assuming the publishing organization was of the type listed in section 170(c) (2), I.R.C. of 1954, which is by no means well established, it was not made richer in a material way by the receipt of William's article. * * * It may well be that petitioner makes contributions to scientific knowledge when scientific articles he writes are accepted by various scientific organizations for printing in their publications. But such contributions do not qualify as property gifts to charitable or scientific organizations. * * * We think our decision for the instant year, 1963, must be the same as *160 it was for the earlier years. In his brief petitioner contends that his primary and sole motive in submitting the paper entitled "Comments on 'Hydrostatics in Various Gravitational Fields'" to The Journal of Chemical Physics was "to make a contribution of chemical knowledge to the public domain of the United States" and - Finally, it must be noted and understood that petitioner Fox's contribution was made in a field of vital concern to the United States. Every step forward in this field can move this entire nation ahead of its rivals in the world. Every step backward represents delay and "second place" at best. Fox's contribution was instrumental in preventing one such delay. Petitioner's alleged contribution was not made to the United States. It was merely an article written by petitioner that was delivered to The Journal of Chemical Physics on December 17, 1962, and published by the Journal on June 1, 1963. There is no evidence in the record to show that any agent or agency of the United States Government was even aware of thealleged contribution, much less a recipient thereof. Since the publication of the paper made the information contained therein available to the entire world *161 and petitioner had no copyright with respect thereto, we do not think there is any basis for concluding that petitioner made a contribution such as would qualify for a deduction under section 170 761 or any other provision of the 1954 Code. Congress has made no provision for deducting any such alleged contribution as petitioner claims he made. Respondent contends, moreover, that petitioner has not established a measurable value of the alleged contribution and that "Even if it should be determined that the petitioners made a charitable contribution or gift in 1963 of property having a value of $13,500 and that the recipient of the gift was the United States, respondent contends that under the provisions of section 170(b) (1)(B) of the Internal Revenue Code of 1954 the deduction is limited to 20% of the petitioners' adjusted gross income for that year." Section 1.170-1, Income Tax Regs., provides, in part, as follows: (c) Contribution in property - (1) General rules. - If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the *162 property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * * Petitioners contend that since the official police regulations applicable to petitioner during this entire period proscribed him from engaging for compensation in any activity other than that of a police officer, whether during duty hours or off-duty time, the alleged contribution of the scientific knowledge contained in Publication (i) was not for sale by him at any price; that there was no readily identified market place, as such, for the specific scientific information created by petitioner; and that is why expert valuation testimony of the character supplied by petitioner was necessary. This expert testimony was given by petitioner and Thomas. Petitioner's testimony is in part as follows: In arriving at a valuation, I endeavored to approximate the salaries that a man such as Ta-Li would receive from General Dynamics in connection with this work. It was noted in Ta-Li's paper that people working at the National Aeronautics and Space Administration research centers were also engaged in related work, *163 and feeling that my contribution would save them a lot of time, a lot of money, unnecessary expense and apparatus and permit their efforts to be directed to possibly more fruitful and useful enterprises, the rough estimate of the cost of personnel and cost of equipment to the United States Government, I came to a conclusion that my contribution was worth at least $60,000. Thomas testified that he had read all of petitioner's publications and believed them to be of great value because they were reviewed by people who are very severe critics before the articles are published. When asked how he would go about evaluating this type of scientific publication, Thomas answered: This is a very diffcult question to answer, because it could be done in a variety of ways. I feel that I have lived long enough in the field of scientific research to have developed a sense of values in reading papers, which papers are supposed to be very valuable, and some are not so good, if you want. I feel that a dollar evaluation might vary with different people to a certain extent. Just as some people will look at an oil painting and decide what they think it is worth, the sales price and so on, I can look at *164 a scientific research - at scientific research - and form an estimate as a result of my background. * * * * * * I have heard, of course, his own estimate of $60,000, and that his deduction of $13,500 - I feel that the $13,500 figure is not an exaggeration, when you consider the amount of time and effort that went behind the ability to write the article in question. On cross-examination, however, Thomas further testified as follows: Never have I been asked to express a dollar value of a paper, but it is common practice among scientists to discuss papers that are published, as to whether they are excellent, or good, or poor, or fair - value on that basis, but never putting a dollar mark in front of it. Even if petitioner had shown that he made a charitable contribution under section 170, we do not believe the evidence introduced by petitioner establishes the measurable value of the alleged contribution provided for in the above regulations, and we have so found as an ultimate fact. Since we are of the opinion and are holding that petitioners are not entitled to any deduction for 1963 under the provisions of section 170, supra, it becomes unnecessary to consider respondent's contentions *165 regarding limitations under section 170(b) (1) (B) of the 1954 Code. Upon reargument petitioner stressed the point that under the police regulations he was proscribed from receiving any 762 compensation for any activity other than that of a police officer. While this point might lend some support to petitioner's claim of donative intent, it does not cure the defect in petitioner's argument that his contribution was not made to the United States or any other organization which would qualify it for a deduction under section 170 of the 1954 Code. Nor does it cure the defect that petitioner has failed to establish the measurable value of the alleged contribution. We hold, therefore, that petitioners are not entitled to a deduction in 1963 for the alleged contribution in question. In order to give effect to the items agreed upon, Decision will be entered under Rule 50. Footnotes
1. This case was tried by Judge Charles Rogers Arundell (Recalled), who died on May 28, 1968. The parties having been advised that the case would be reassigned to another judge to decide it on the original record unless objected to, and neither party objecting, the case was reassigned to Chief Judge M.W. Drennen for opinion and decision on the record made before Judge Arundell↩. Judge Drennen heard oral argument by the parties on June 26, 1968, at petitioners' request.
2. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction. - (1) General rule. - There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. * * * (c) Charitable Contribution Defined. - For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of - (1) A State, a Territory, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes. (2) A corporation, trust, or community chest, fund, or foundation - (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State or Territory, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any prvvate shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. ↩
3. Sec. 1.170-1 Charitable, etc., contributions and gifts; allowance of deduction. (a) In general - (1) General rule. Any charitable contribution (as defined in section 170(c)) actually paid during the taxable year is allowable as a deduction in computing taxable income, regardless of the method of accounting employed or when pledged. * * * (2) Information required in support of deductions for taxable years beginning before january 1, 1964. In connection with claims for deductions for charitable contributions paid in taxable years beginning before January 1, 1964, taxpayers shall state in their income tax returns the name and address of each organization to which a contribution was made and the amount and approximate date of the actual payment of each contribution. Any deduction for charitable contribution must be substantiated, when required by the district director, by a statement from the organization to which the contribution was made indicating whether the organization is a domestic organization, the name and address of the contributor, the amount of the contribution, and the date of its actual payment, and by such other information as the district director may deem necessary.
4. The first occasion involved the year 1959 and the issue presented was whether petitioners were entitled to a deduction under section 170, I.R.C. 1954, in the amount of $9,000 for the "value of scientific contributions." Our decision was for the respondent. William and Catherine Fox, Docket No. 2366-62, decided Sept. 11, 1963, T.C. Memo. 1963-247. The second occasion involved the years 1960, 1961, and 1962, and the issue presented was whether petitioners were entitled to deductions under section 170, I.R.C. 1954, in the amounts of $11,000 for 1960, $12,000 for 1961, and $12,900 for 1962 for "scientific contributions of articles written by William, as indicated by enclosures." Our decision was for the respondent. William and Catherine Fox, Docket Nos. 2997-64 and 5974-64, decided July 19, 1965, T.C. Memo. 1965-195↩. Petitioners did not appeal either decision.